```
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------X
EXECUTOR OF THE ESTATE OF CELIA
KATES, PHILIP BARASH, BENEFICIARY OF
THE IRVING KATES TRUST,
SANDRA BARASH,

                        Plaintiffs,          MEMORANDUM OF DECISION
                                             AND ORDER
                                             04-CV-5153 (DRH) (WDW)
        - against -

NORTHERN TRUST CORPORATION,
WILLIAM A. OSBORN, CEO, and GWEN
BOYKIN,

                        Defendants.
----------------------------------------------------------X
```

**A P P E A R A N C E S :**

**PHILIP BARASH, PRO SE**
6 Serenite Lane
Muttontown, New York 11791

**KATTEN MUCHIN ZAVIS ROSENMAN**
Attorney for Defendants
575 Madison Avenue
New York, New York 10022
By: Jay W. Freiberg Esq.

**HURLEY, District Judge:**

Plaintiff Philip Barash, as Executor of the Estate of Celia Kates and his wife Sandra Barash (collectively, "Plaintiffs") filed the present action against defendants Northern Trust Corporation ("Northern Trust"), William A. Osborn, CEO, and Gwen Boykin (collectively, "Defendants"), asserting multiple claims arising out of Defendants' alleged mismanagement of a trust. Defendants have moved to dismiss the Amended Complaint pursuant to Federal Rules of Civil Procedure 12(b)(1), (2), (3), (6), and (7). For the reasons that follow, Defendants' motion is granted and this case is dismissed in its entirety.

## BACKGROUND

This action arises out of a testamentary trust created under the will of Irving G. Kates, dated December 10, 1982 (the "Trust"). (Am. Compl., Ex. 2.)[1] Upon Irving G. Kates' death in 1988, (*see id.* at Ex. 4), and according to the terms of his will, the initial trustees of the Trust were his wife, Celia Kates, and his two daughters, plaintiff Sandra Barash and non-party Gloria Kates. (*Id.* Ex. 2.) Celia Kates had a lifetime income interest in the Trust and Sandra Barash and Gloria Kates were the remainder beneficiaries. (*Id.*) Pursuant to the terms of the Trust, it terminated upon the death of Celia Kates. (*Id.*)

Pursuant to a settlement agreement between the initial trustees and others dated September 26, 2001, "Northern Trust, 440 Royal Palm Way, Suite 102, Palm Beach, FL 33480," became the sole Trustee of the Trust. (*Id.* Ex. 3.) Attached as exhibits to the Amended Complaint are two letters from "Northern Trust Bank, 440 Royal Palm Way, Palm Beach, Florida 33480" to Sandra Barash, dated May 13, 2003, and July 13, 2004, respectively, regarding matters related to the Trust. (*Id.* Exs. 16, 18.)

Following the death of Celia Kates in August 2004, "Northern Trust Bank of Florida, N.A." commenced a proceeding in the Probate Division of the Circuit Court of the Fifteenth Judicial Circuit in and for Palm Beach County, Florida to settle its final account and to thereafter distribute the Trust's assets. (*Id.* Ex. 12.) After a trial, the Probate Court entered a

---

[1] The Amended Complaint includes 28 exhibits, all of which the Court has considered in deciding the present motion. *See Leonard F. v. Israel Disc. Bank of N.Y.*, 199 F.3d 99, 107 (2d Cir. 1999) ("In adjudicating a Rule 12(b)(6) motion, a district court must confine its consideration to facts stated on the face of the complaint, in documents appended to the complaint or incorporated in the complaint by reference, and to matters which judicial notice may be taken.").

final judgment on January 27, 2005. (*Id.*) The court held, inter alia, that "the principal place of administration of the Trust was in Palm Beach County, Florida for the entire time which Northern Trust served as Trustee and thus this Court has venue and jurisdiction." (*Id.*) The Probate Court further approved all of Northern Trust's accountings. According to Defendants, distribution of the net assets to the beneficiaries has not yet occurred because Philip Barash has appealed the final judgment to the Florida District Court of Appeals and has also sought a stay of its enforcement. (Defs.' Mem. at 5.)

The thrust of Plaintiffs' allegations in this action is that pursuant to its own terms, the Trust appointed defendant *Northern Trust* as Trustee, not *Northern Trust Bank of Florida, N.A.*, the party which initiated the Florida probate action. Accordingly, Plaintiffs allege, Northern Trust illegally "posed" as a Florida corporation, to wit, Northern Trust Bank of Florida, N.A., "to gain access" to the Florida Probate Court and falsely claimed that the Trust was a Florida trust governed by Florida law. Plaintiffs allege that Northern Trust, a national bank, is the real party in interest and, thus, Northern Trust Bank of Florida, N.A. had no standing to bring the Florida action and did so fraudulently. Thus, Plaintiffs allege that Northern Trust "induced" the Florida Probate Court to violate the law by wrongfully entertaining the suit. Because Northern Trust Bank of Florida, N.A. is the wholly owned subsidiary of Northern Trust, Plaintiffs allege that Northern Trust is liable for its acts. Plaintiffs assert fourteen causes of action based upon Northern Trust's alleged fraudulent initiation of the Florida probate suit and its alleged mismanagement of the Trust. The Amended Complaint also names as defendants William A. Osborn, Chairman, Chief Executive Officer, and President of Northern Trust and Gwen Boykin, Vice President of Northern Trust Bank of Florida, N.A.

3

**DISCUSSION**

*I.    Applicable Law and Legal Standards*

The court may not dismiss a complaint under Rule 12(b)(6) unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief. *Aetna Cas. and Sur. Co. v. Aniero Concrete Co.*, 404 F.3d 566, 604 (2d Cir. 2005). The Court must accept all factual allegations in the proposed complaint as true and draw all reasonable inferences in favor of the plaintiff. *King v. Simpson*, 189 F.3d 284, 287 (2d Cir. 1999); *Jaghory v. New York State Dep't. of Educ.*, 131 F.3d 326, 329 (2d Cir. 1997).

*II.    The Probate Exception to Diversity Jurisdiction Applies to this Action*

In the instant case, subject matter jurisdiction is predicated upon diversity jurisdiction. Such diversity jurisdiction requires that the parties be completely diverse and that the amount in controversy exceed $75,000. 28 U.S.C. § 1332. However, even where these requirements are satisfied, "the Supreme Court has held that 'probate matters' are excepted from the scope of federal diversity jurisdiction." *Moser v. Pollin*, 294 F.3d 335, 340 (2d Cir. 2002) (quoting *Markham v. Allen*, 326 U.S. 490, 494 (1946)). The reason for this limitation is "'that the equity jurisdiction conferred by the Judiciary Act of 1789 . . . which is that of the English Court of Chancery in 1789, did not extend to probate matters.'" *Id.* (quoting *Markham*, 326 U.S. at 494).

"A two-part inquiry is used to determine whether a particular lawsuit implicates 'probate matters' such that the probate exception to federal diversity jurisdiction applies." *Id.* Satisfaction of either part mandates the dismissal of the action for lack of subject matter jurisdiction. *Id.* The first part of the inquiry requires the Court to examine if "the federal district

court sitting in diversity [is] being asked to directly probate a will or administer an estate." *Id.* Such "functions are 'purely probate' in character and are considered to be categorically outside the jurisdiction of the federal courts." *Id.* (citing *Markham*, 326 U.S. at 494). This first part of the inquiry is rarely satisfied.

The second inquiry directs the Court to determine "whether entertaining the action would cause the federal district court to 'interfere with the probate proceedings or assume general jurisdiction of the probate or control of property in the custody of the state court.'" *Id.* (quoting *Markham*, 326 U.S. at 494).

Here, the exercise of jurisdiction would impermissibly interfere with the Florida probate proceedings as the accountings approved by that court could potentially be rendered meaningless should this Court entertain this case. The instant dispute between the parties turns singularly on the proper identity of the Trustee and whether it mismanaged the Trust. These issues have already been decided, either directly or indirectly, by the Florida Probate Court.[2] By

---

[2] In this regard, the Court notes that the instant action is also barred under the doctrines of res judicata and collateral estoppel. *See Storey v. Cello Holdings, L.L.C.*, 347 F.3d 370, 380 (2d Cir. 2003) ("Under the doctrine of *res judicata,* or claim preclusion, a final judgment on the merits of an action precludes the parties or their privies from relitigating issues that were or could have been raised in that action.") (internal quotation marks and citations omitted); *Uzdavines v. Weeks Marine, Inc.*, 418 F.3d 138, 146 (2d Cir. 2005) ("Collateral estoppel, or issue preclusion, applies where: (1) the identical issue was raised in a previous proceeding; (2) the issue was actually litigated and decided in the previous proceeding; (3) the party had a full and fair opportunity to litigate the issue; and (4) the resolution of the issue was necessary to support a valid and final judgment on the merits.") (internal quotation marks and citations omitted). Although there is a fraud exception to the application of res judicata, *see Moser*, 294 F.3d at 342 (citing *Ryan v. New York Tel. Co.*, 62 N.Y.2d 494, 500 (1984)), there are no allegations here that Defendants' alleged fraud prevented Plaintiffs from asserting their fraud claims in the probate action. *See, e.g., Weldon v. U.S.*, 70 F.3d 1, 5 (2d Cir. 1995). In fact, the Amended Complaint demonstrates that Plaintiffs were aware of their claims regarding Northern Trust and Northern Trust Bank of Florida, N.A. during the pendency of the probate suit. Accordingly, the fraud exception to res judicata would not apply in this case.

filing the instant suit, Plaintiffs undoubtedly seek to obtain a different result than that received in the Florida probate action. "Such an interference with the functions of a state probate court is . . . prohibited by the probate exception to federal diversity jurisdiction." *Moser*, 294 F.3d at 345.

Moreover, Plaintiffs' attempt to circumvent this conclusion by alleging the existence of a violation of federal law that presumably was beyond the jurisdiction of the Probate Court is misguided as Plaintiffs have wholly failed to sufficiently allege any such violation. All of the claims asserted in this action were either raised, or could have been raised, in the Florida Probate Court.[3]

### *CONCLUSION*

For all of the above reasons, Defendants' motion to dismiss is GRANTED as to all of Plaintiffs' claims, and this case is accordingly DISMISSED in its entirety. The Clerk of Court is directed to CLOSE this case.

**SO ORDERED.**

Dated: November 17, 2005
      Central Islip, New York  /s
                                            Denis R. Hurley,
                                            United States District Judge

---

[3] To the extent Plaintiffs allege that the Florida Probate Court erroneously exercised jurisdiction because Plaintiffs had removed the action to this Court, that claim has already been rejected by this Court in case number 04 CV 5295, wherein the Court found that Plaintiffs improperly removed the probate action to this Court and remanded it back to Florida. (*See Trustee Northern Trust Bank of Florida, N.A. v. Estate of Celia Kates*, 04 CV 5295 (Mar. 29, 2005 Order).)